Good morning, Your Honors. Kenneth M. Stern for the Court. May it please the Court, this is a case in which, for jury misconduct, the appellant was convicted of two mutually exclusive crimes, both... What do you mean, jury misconduct? Well, in the case of Steckler, that's cited in my briefs, Your Honor, the Court has stated that if a jury improperly renders inconsistent verdicts, that is jury misconduct. Counsel, would you precisely state for me the decision of the United States Supreme Court that you say constitutes the violation? Yes, that would be Apprendi and Duncan v. Louisiana, Your Honor. The Supreme Court has not ruled upon the very narrow issue of whether two inconsistent, guilty verdicts constitute error. However, the focus should not be so narrow, because under the general law, the Supreme Court has, under Apprendi and Duncan, ruled that it is up to a jury to make the factual findings regarding what crime has been committed. Here what happened was the jury rendered inconsistent, guilty verdicts. The judge then decided which verdict he wanted to be the guilty verdict. So we have a state law claim, and was there an appeal or a petition for certiorari to the Supreme Court of the United States? Not in this case, Your Honor. All right. Now you're here on collateral review. Yes. And we're not going to interfere with a state claim unless the Federal Supreme Court has told us exactly what is wrong with this case. Well, they have done this, and by analogy, Your Honor. By analogy or specifically? Well, let me give you an analogy. You can have a known disease that has known symptoms, but there may be one or two symptoms of that disease that are unknown. The fact that a person may have a symptom, which at that point as to science is unknown as being a symptom of that disease, would not negate the fact that the person still has the disease, because you go under the general rubric. Here, while the Supreme Court has not ruled upon that very narrow issue, what is reflective of that juror conduct and the judge's conduct thereafter in sentencing does come within U.S. Supreme Court law, which states that under Apprendi and under Duncan v. Louisiana, it is up to a jury to engage in proper conduct to discharge their duties, which they did not do by rendering the inconsistent verdicts. It is also up to the jury to make the factual findings as to all of the elements of the crime for which a person is to be convicted. And that did not occur here. Neither Apprendi, well, certainly Apprendi does not deal with an inconsistent verdict, does it? No, it does not. Does Duncan deal with an inconsistent verdict? No, it does not. As a matter of state law? No, neither does that. But then how do you get in under the ADPA? Because what's really happening here under the circumstances is you have a situation where the jury did not discharge their duties as jurors. It clearly appears here that some jurors felt that what the facts showed, that a burglary theft occurred. Other jurors felt that the receiving stolen property occurred because they couldn't decide which. They just deemed that they would find him guilty upon both counts. Well, wasn't the defendant's, upon the guilty verdict, wasn't the defendant's remedy to appeal through the appellate system of California, its Supreme Court? He did that, Your Honor. And he's still denied a Federal right to appeal to the Sikh Sorcerer and Supreme Court of the United States? Well, he could also go by way of habeas corpus, which is the route that he chose. Now, under habeas, certainly, there has to be Supreme Court law in existence by which covers the situation. But as I've indicated, I've cited U.S. v. Lanier to the Court. The fact that there may be a, may not be a specific pinpoint ruling on a specific pinpoint issue does not mean that the case, that the case law as decided by the U.S. Supreme Court under the general law does not mean that that specific issue would not come within that rubric. All right. Is Lanier an inconsistent verdict case? No, it's not, Your Honor. I haven't found one yet. Have you? There is none except for civil cases, Your Honor, where I've discussed. This is not a civil case. No. It's a criminal case, and you're here on habeas. Yes, Your Honor. There is no specific ruling. In fact, U.S. v. Powell specifically said it was reserving that issue. It had not decided that specific issue. But the case law to be applied is apprendi, apprendi because that sets forth a principle under which this conviction is faulty, in which there was juror misconduct, the jury did not reach. What did the judge tell the jury when the? Well, the judge instructed the jury. The jury was being instructed. The jury was instructed that they had to select which crimes occurred and convict only upon those crimes. In California, under CALJIC 17.01, there's. Did the judge say anything about inconsistent? Well, it's the 17.01 talks about if there are facts which could be inconsistent crimes, you have to select which facts and which facts and which crime are committed that you can't have inconsistent verdicts. And at sentencing, the court recognized that this was error and was, it was inconsistent verdicts. What did the judge tell the jury about inconsistent verdicts? Well, the judge instructed the jury with, in CALJIC 17.01, which talks about the fact that you, where you have the same facts which can be more than one crime, you have to select one or the other. The judge also, I think, said that the defendant may be found guilty or not guilty of any or all of the crimes charged. Right. But. Which sort of authorization? I think that might be confusing to the jury. But the instructions. Did he say that? Well, the instructions show there, the instructions show, as given to the jury show, that either, either you stole the property, you're the actually person who actually went and took the property from inside the house, or, inconsistently, someone else stole the property and you were sold the property under circumstances where you would have known that it was stolen property. So the jury was instructed that it's one crime or the other. And the Court recognized. Were there fingerprints on the window? I believe there may have been, but I don't know that they were, that they were able to, able to identify the fingerprint. And I think that the judge clearly, at sensing. On the heel marks on the rug. They were never tied to, to my client, Your Honor. My, my clients, I believe the facts were my client was caught with the stolen property and he had been in that home previous to the commission of the alleged crime. So there, there was evidence that he was there beforehand. And he, if either of the crime. He wasn't caught with it. I thought he sold it. Well, yeah. That's when he, he was actually caught with some of the property. And the other property was found at the pawn shop that he sold it to. So he had some, plus he sold some. And, and the fact that Apprendi, the broad laws from Apprendi and Dunklin, Louisiana, probably also addressed the Teague issue of retroactivity. I'm telling the court that it need not look so narrowly as to the specific issue. It looks to the broad law as from the Supreme Court in which under both Apprendi and Dunkin, the facts of what occurred in this case are error and violations of that Supreme Court precedent in that the court basically picked the facts that was improper under Apprendi and the jury engaged in misconduct. I'd like to reserve my last nine seconds for about a whole case. Thank you. Good morning, Your Honors. Deputy Attorney General Timothy Weiner, for Respondent. I just wanted to answer a question Judge Pragerson had asked briefly. There were fingerprints found on the window, but they were never tested. So they were never conclusively tied to Petitioner. Well, they were never tested. They weren't able to match the fingerprints because I guess the condition of them because of the weather and such made them unmatchable. But there was a palm print found on the window which the victim always kept locked, she stated. And that was found right under, and underneath that palm print was a muddy boot print and some leaves from outside. So one of the prosecution theories was that the Petitioner came in through that window, opened the window, and stepped in through the window. Well, how about the boot print? Was that identified? It was never tested to match to a boot owned by the Petitioner. I don't know what you mean when you say it was never tested. Did they just overlook? No, no, Your Honor. I believe they couldn't match. Maybe tested was the wrong word. When it was tested, it wasn't conclusively matched. They couldn't match it to the Petitioner's hand, is my understanding, because the condition of the print was such where they couldn't make a positive identification from it. And they couldn't match the boot print. I don't believe any effort was ever made to match the boot print to a boot owned by the Petitioner. Of course, it was weeks between the time the boot print was made and the time she complained to the police. That's correct, Your Honor. I believe it was 10 days' time had passed from the time the victim noticed those things until she contacted the police. And when the police came out at that point, they said that they were going to test the hand print, but it wouldn't, you know, it wasn't good enough to make a positive match. Your Honor, in this case, when the United States Supreme Court explicitly reserves a judgment on an issue, there can be no clearly established Federal law. This Court so held in Moore v. Calderon. Well, let's take, for instance, the recent sentencing cases. The Supreme Court originally came down with the Blakely case. And it said, this is a state law matter. We're not talking about the guidelines. And then courts all over the country on habeas said, there's no way you can read Blakely and uphold the guidelines as they are now administered. So they started saying, well, we look at Blakely, and we don't care whether it was exactly the Federal thing. Everything that it established drives us in that direction. So all the Federal courts in the country started invalidating the guidelines. It gets up to the Supreme Court, and they say, that's right. But you don't always have to have a perfect match between the Supreme Court decision and the case before it. That's certainly true, Your Honor. I think the difference in this case, however, is that the very, very issue that is explicitly reserved by the United States Supreme Court. I wonder if there's anything in Blakely saying we're not talking about the Federal guidelines. Well, Blakely, too, has not been effective to retroactively to cure a lot of the prior sentencing errors. Well, that's a Teague question, which is the second problem you might have here. I'm sorry, Your Honor? That's the Teague issue, I suppose, which may well be a problem for it. Yes, Your Honor. And the other thing I wanted to point out, I think what the Court's getting at, it's something that is sort of the overriding due process concern about having these inconsistent, you know, seemingly inconsistent verdicts of guilt, which wasn't the issue, of course, in Powell. Powell was inconsistent verdicts where one was guilty and one was not guilty. And that's easily explained. Of course. Because the version of proof is different. And the Supreme Court also said that there may very well have been sufficient evidence for both and that the decision was arrived to by lenity on the part of the jury. In this case, though, the Petitioner, not only did he receive concurrent sentencing, so there was no prejudice or any effect to his sentence that way, the sentence for count two, the grand theft count, was also stayed. But I thought my understanding was that he got an extra 10 years because the judge picked the burglary as being the one to sentence on rather than the not returning found property, not properly, you know. Well, the way the sentencing took place in this case, Your Honor, there were three counts originally. The jury convicted on all three counts. The count one, which was the burglary count, Petitioner received a sentence of 35 years to life. The remaining counts were consolidated into one grand theft count. And he received a 25 year to life sentence in that case, which was then. The 25 years to life was because the jury found that he discovered the lost property and basically appropriated it. He didn't try to find out whose it was or anything else. That's inconsistent with his having burglarized the place and gotten the property.  You're correct, Your Honor. However, in this case, because this case is coming to this court on habeas review under the ADPA, we need to look to a clearly established piece of federal law as determined by the United States Supreme Court. And as mentioned earlier, United States v. Powell very explicitly reserved judgment on this issue. And because of that footnote, footnote eight in United States v. Powell, we simply. That issue was not before him. It squarely wasn't. So they didn't have to decide that issue. That's correct, Your Honor. So they're just pointing that out. But they took the time to reserve judgment on that issue. In Moore v. Calderon, this court has recognized that when the U.S. Supreme Court reserves judgment on an issue, that there cannot be clearly established federal law under 28 U.S.C. 2254. And that's the situation we're in now because we are here on habeas review under the ADPA. But we are. You know, it may very well be that in resolving Powell with cases, you know, with other cases, I believe that the magistrate judge Zareski even noted this in the R&R. He said that in reconciling Powell with the Jackson v. Virginia and other cases, the U.S. Supreme Court may hold that inconsistent guilty verdicts cannot stand. And if I can quote from his thing, he said, however, because it is not done. The judge could have sentenced him to 25 to life, right? I mean, this was a three strikes case. That's correct. And he could have said, well, okay, they're inconsistent. Logically, you really can't be convicted of finding a ring outside, a gold chain or whatever it was, and be convicted for failing to return it, and at the same time be convicted for coming into a house and taking the ring and the chain out of a purse and committing a burglary. So they're inconsistent. So the judge could have gone with the 25 to life instead of the 35 to life. That's true, Your Honor. However, the judge did run the sentences concurrently. What difference does that make? He could have gone the other way. He could have. But that sentencing decision, that sentencing choice really isn't at issue here. The issue here is whether or not the inconsistent guilty verdicts can stand. And because we're coming, again, on habeas review, and because there's no clearly established law as determined by the United States Supreme Court, the decision of the California courts is entitled to deference here. I'd also like briefly to Well, you know, what would Dickens say about a situation like that? I'm sorry, sir? Nothing. Go ahead. I also wanted to respond briefly to opposing counsels Apprendi and Duncan and sort of the jury misconduct. This isn't a jury misconduct case at all. There's no issue of jury misconduct here. Sufficient evidence supports either of these convictions. If you're looking at the burglary conviction, there is plenty of evidence to support the theory the petitioner came into this house. You have the footprint, the palm print. And he can go either way. Believes. Didn't he come out and say he found it? Absolutely, Your Honor. He had his vote and he had it both ways. So there is sufficient evidence. And I just wanted to bring to the Court's attention this is not a case where the jury just advocated its fact-finding mission. And that also goes to the Apprendi. One or the other, but not both. That's correct. But why did the judge let him come back with a verdict on both? That I can't answer, although I do know that the judge was aware of this. And as soon as he identified what had happened, he immediately took steps to correct the problem to ensure that Petitioner suffered no ill from the jury's seemingly inconsistent verdicts. And by running the law. Well, that depends on which one you invalidate. I mean, if the judge says, well, I believe the jury, when it found beyond a reasonable doubt that he found this stuff outside, well, that means he's subject to 25 years of life. And then the judge says, and I also believe that the facts as found by the jury beyond a reasonable doubt that he also burglarized it. And those are inconsistent scenarios. And he said, well, I'll sentence on the one that takes 35 to life. So when you say it doesn't make any difference, it makes 10 years difference, which may not seem like much. It's a 35-year sentence. What's up? We got at least 10 more years with you. That's absolutely true, sir. He did choose the 35-year-to-life sentence. However, again, you know, that particular sentencing choice is not currently before the Court. The issue before this Court is whether the two inconsistent verdicts can stand under the AEDPS. I suppose if, I mean, if we were to determine that inconsistent guilty verdicts under Supreme Court precedent can't stand, you'd probably have to invalidate the whole thing because there'd be no way to tell which one the jury. Yeah. I suppose they could elect the lesser one, but yeah. In closing, Your Honors, I'd like to request, and Respondent requests, that the judgment of the district court be affirmed. Why is your office so adamant on this? Well, Your Honor, there is a State interest here, and it goes to fairness. And the State interest really here is in preserving the possibility of, you know, there may be further appellate action in any case. And the State interest is in preserving convictions where sufficient evidence supports either conviction. And again, in this case, and in most cases, you know, California law has Penal Code Section 654, which will prevent any double punishment from a case like this. And that's what happened in this case. As I said, there were concurrent sentences, but the case was also the second sentence. We don't know really what the, well, I suppose we just have to say the jury found that he was guilty of one beyond a reasonable doubt and guilty of the other beyond a reasonable doubt, but that's totally illogical. It is illogical, but the. Unless he had a split personality. But again, the harm that may have come from that was prevented by operation of law, by conviction, but also by operation of the fact that the judge imposed the sentences as he did. Kennedy. Yeah, but still he got, there's still that extra 10 years there. He was sentenced to the higher term. That is correct. However, again, under the ADPA, the issue is whether or not the two, the two verdicts can stand. And it's, of course. I suppose you could always answer the question Judge Ferguson asked, but why is the State so adamant, is it? Well, the State thinks he burglarized the property. He certainly did, and certainly sufficient evidence supports that. Thank you, Your Honor, for your time today. Your Honor, it's Teague v. Lane. They state something there that really applies to this case. One of the exceptions in Teague's application is that there must be fundamental fairness and accuracy in a criminal proceeding. That absolutely did not occur here. As to the juror error, the Stekler case, which is cited in my brief, Federal Second, page 59. At page 60, the court clearly states that this was, that this kind of conduct is jury error. And there's a general, I think a general, there's a maxim under California law. It's a very general principle throughout society. The general governs the specific. Here you have general law issued by the Supreme Court that the jurors must discharge their duty, the jurors must be the one who finds the facts, and it cannot be the judge. This is what occurred here. It was the judge who determined that of which appellant was guilty. That is improper. I guess if I were thinking of the usual theory, it would be that the specific governs the general. Well, here, here the specific issue is a subset of the general law. The general law provides for the errors that occurred here. And all the court has to do is apply that general law as enunciated by the U.S. Supreme Court to this situation. And from that, it will derive the rule that is applicable to this case. And upon that, I would like to submit, Your Honor. Thank you. The matter stands submitted. Thank you. And we'll come to our next witness.
judges: Pregerson, Canby, Beezer